THE WESTERN UNION TELEGRAPH COMPANY v. HENRY GILSTRAP.

No. 15,357.   (94 Pac. 122.)

SYLLABUS BY THE COURT.

DAMAGES—*Exemplary—Failure to Deliver a Telegram.* The case of *Telegraph Co. v. Lawson,* 66 Kan. 660, 72 Pac. 283, followed, and *held,* that the evidence in respect of the failure of defendant to deliver a death message showed such wanton and reckless disregard of the rights of the plaintiff as to warrant exemplary damages, and that the amount allowed by the jury, though somewhat excessive, will not be disturbed.

Error from Rice district court; JERMAIN W. BRINCK-ERHOFF, judge.    Opinion filed January 11, 1908.    Affirmed.

*George H. Fearons, W. H. Rossington, Charles Blood Smith,* and *Samuel Barnum,* for plaintiff in error.

*Samuel Jones,* and *Foley & Hopkins,* for defendant in error.

The opinion of the court was delivered by

PORTER, J. : This action was brought to recover damages for failure to deliver a telegram.    The jury returned a verdict allowing $770.52 damages, and judgment was rendered thereon, which the defendant by this proceeding in error seeks to reverse.

The telegram in question was sent from Neosho, Mo., and reads as follows:

*"To Henry Gilstrap, Lyons, Kan.:*
    "Father very sick, come if can.    JOHN SAYERS."

It was received at Lyons, Kan., at 9 :28 in the forenoon of June 7, 1906.    It was not actually delivered until 2 :25 in the afternoon of the following day.    The sender of the message was plaintiff's brother-in-law. The person referred to in the message was the father of plaintiff, and was an old man, whose death occurred before plaintiff was able to arrive at his bedside.    The plaintiff had lived at Lyons for about a year, and at the time the message was received his residence was within five blocks of the office of the defendant.    He was a laboring man who had been employed with another brother-in-law by the name of Cubage, but at the time the message was received was at work at the salt-plant in Lyons, which was beyond the limits in which defendant delivered messages.    When the message was received the messenger of the defendant copied it, and it is admitted that both he and the operator knew its contents.

The messenger, before leaving the office, prepared a

Telegraph Co. v. Gilstrap.

postal-card notice of the receipt of the message, addressed to Henry Gilstrap, Lyons, Kan., and went to the post-office and inquired of Mr. Dupree, deputy postmaster, whether he knew the plaintiff and where he lived. Mr. Dupree told him that plaintiff had been working on the Presbyterian church with Mr. Cubage but that he thought they were through with the work on the church. Mr. Cubage was at the time at work on a building on the west side of the public square. Notwithstanding the messenger was well acquainted with Cubage and had formerly worked with him, the only effort he made to find him at that time for the purpose of learning plaintiff's address was to inquire at a store and of some person on the street, whose name he could not recall when a witness. He then returned to the post-office and mailed the notice. He made no further attempt to deliver the telegram, except that he called at the residence of Mr. Cubage after mailing the card, but found no one at home. Mr. Cubage testified that he met the messenger on the street the next day and asked him why he had not delivered the message, and that he replied: " 'By God, I don't have to run all over town delivering messages. I put a card in the post-office and he is supposed to get his mail.' "

It is admitted that Henry Gilstrap was well known to the postmaster, the merchants, and many other citizens; that he was a subscriber to the telephone and that his name was in the alphabetical list of subscribers thereto, a copy of which was in the telegraph office and within access of the operator and the messenger. The defendant company claims that it was not its custom to deliver messages by telephone, except where directions had been previously given by merchants and others to that effect, but there is no reason why the telephone might not have been used to call up the family of Henry Gilstrap to ascertain his whereabouts and inform them that a telegram had been re-

13—77 KAN.

ceived.   Nor is there any apparent excuse for the fail-ure to find Mr. Cubage, who was well known, and who, the messenger was informed, would probably know where plaintiff could be found.   At about eleven o'clock on the following day the family of plaintiff heard in a roundabout way that there was a telegram at the office, and learned its contents by telephone; and, although the message was not delivered until after two o'clock in the afternoon of that day, plaintiff learned of its contents about noon.   It was then too late for him to take the most direct railroad route to Neosho and he left on the morning of the 9th, reaching Neosho some hours after his father's funeral had occurred. He repaid to the sender the fifty cents paid for the message, and the actual pecuniary loss sustained by him amounted to $20.52.   Of the damages allowed $750 was given as exemplary, or punitive, damages.   It ap-pears that a second telegram was received by plaintiff at four o'clock on the 8th, informing him of his father's condition, so that when he started on the 9th he knew that he could not see his father alive, but the evidence shows that if the telegram had been promptly deliv-ered he could have reached the bedside of his father before the latter's death.

The only question in this case is whether there was such wanton and reckless disregard of the rights of plaintiff by the failure to deliver the telegram as to warrant exemplary damages, and the further question whether the amount allowed is excessive.   We have no hesitation in saying that the evidence shows such wan-ton and gross negligence on the part of defendant as to warrant exemplary, or punitive, damages.   And while the amount is somewhat excessive, and a great deal more than we would have allowed had the ques-tion been submitted to us in the first instance, we do not feel, under the circumstances, like requiring plain-tiff to remit any part of it.   The case is in all respects like *Telegraph Co. v. Lawson,* 66 Kan. 660, 72 Pac.

Telegraph Co. v. Gilstrap.

283, in which exemplary damages were allowed against the same company to the sender of a death message where the telegram was not delivered on account of gross negligence of the agents of the company. The cases in support of the rule heretofore adopted by this court in respect of the allowance of such damages are cited in the opinion in that case, and we deem it unnecessary to review them here. The judgment is affirmed.

JOHNSTON, C. J., BURCH, MASON, SMITH, GRAVES, BENSON, JJ., concurring.

PORTER, J. (dissenting) : I concur in all that is said in the opinion except as to the amount of the judgment, which I think is so excessive as to warrant a reversal or that plaintiff be required to remit a substantial portion thereof. I concede that telegraph companies frequently exhibit a reckless disregard of the rights of their patrons by the failure to use even ordinary diligence in the delivery of messages, and that their employees too often make only a perfunctory effort to find the person to whom a message is addressed and then resort to the mails to notify him thereof. I do not think, however, that plaintiff in this case should be allowed for these reasons to enrich himself at the expense of defendant in an amount so far in excess of the damages actually sustained.